UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **SANDRA GOMEZ AND G.A.L.S. INC.** § | CIVIL ACTION NO: |
| § | |
| *Plaintiffs* § | |
| § | |
| v. § | |
| § | |
| **FCA US LLC** § | |
| § | |
| *Defendant* § | **JURY TRIAL REQUESTED** |

# COMPLAINT

## I. Parties

1. Plaintiffs, SANDRA GOMEZ is an individual that is now and has always been a citizen of the state of Texas and G.A.L.S. INC. is a Texas corporation that was incorporated in the state of Texas and is a citizen of the state of Texas.

2. Defendant, FCA US LLC, hereinafter "CHRYSLER," is a citizen of Delaware and a Delaware limited liability company with its principal place of business at 1000 Chrysler Drive, Auburn Hills, MI 48326 and is not publicly owned. It is one hundred percent owned by FCA North America Holdings LLC. FCA North America Holdings LLC is a citizen of Delaware and a Delaware limited liability company with its principal place of business at 1000 Chrysler Drive, Auburn Hills, MI 48326 and is one hundred percent owned by FCA Holdco B.V. FCA Holdco B.V. is a citizen of the Netherlands and a company organized under the laws of the Netherlands with its principal place of business at Singaporestraat 92 1175 RA Lijnden, Netherlands. FCA Holdco B.V. is one hundred percent owned by Stellantis N.V. (formerly known as Fiat Chrysler Automobiles N.V.), which is a publicly traded company organized under the laws of the

Netherlands. Stellantis N.V. is a citizen of the Netherlands with its principal place of business at Singaporestraat 92 1175 RA Lijnden, Netherlands.

CHRYSLER's agent for process service is C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II. Jurisdiction

3. This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law, and the amount of controversy exceeds $50,000.00.

Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to them any money or property, real or personal, which may have been acquired in violation of the Texas DTPA. Plaintiffs are also seeking treble damages under Texas DTPA §17.50(b)(1), therefore, Plaintiffs' damages which will exceed $100,000.00, not including attorney fees and costs.

## III. Venue

4. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

5. All conditions precedents have been performed or have occurred.

## V. Facts

### A. The Transaction

6. On May 24, 2024, Plaintiffs purchased a new 2024 JEEP GRAND WAGONEER bearing VIN: 1C4SJSFP3RS109317, hereinafter "Subject Vehicle," from LAREDO DODGE CHRYSLER JEEP.

The Subject Vehicle was purchased primarily for Plaintiffs' personal use. The purchase price was $119,257. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See **Hughes v. Segal Enterprises, Inc.**, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); **Chariton Vet Supply, Inc. v. Moberly Motors Co.**, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).

### B. Implied Warranties

7. As a result of the sale of the Subject Vehicle by Defendant to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the Subject Vehicle would pass without objection in the trade under the contract description; and that the Subject Vehicle was fit for the ordinary purpose for which such Subject Vehicle are purchased.

8. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

9. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including that any malfunction in the Subject

Vehicle occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the Subject Vehicle had, in fact, repaired the defects.

10. Plaintiffs' purchase of the Subject Vehicle was accompanied by express warranties offered by the Defendant and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the Subject Vehicle.

11. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the Defendant's warranty booklet and owner's manual.

### D. Actionable Conduct

12. In fact, when delivered, the Subject Vehicle was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following**:**

    **A. BATTERY DEFECTS, NON-CONFORMITIES, AND CONDITIONS.**

    **B. TURNS OFF WHILE DRIVING.**

    **C. DOOR WILL NOT UNLOCK.**

    **D. INTERMITTENTLY WILL NOT ACCELERATE.**

    **E. STEERING WHEEL WILL LOCK UP.**

    **F. SUBJECT VEHICLE IS CURRENTLY AT LAREDO DODGE CHRYSLER JEEP AND HAS BEEN OUT OF SERVICE FOR MORE THAN 30 DAYS.**

  G. **ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY AND ALL REPAIR ORDERS.**

13. Since purchase, Plaintiffs have returned the Subject Vehicle to the Defendant and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which the Defendant was given the opportunity to repair the Subject Vehicle the more significant and dangerous conditions were not repaired. The Defendant failed to repair the Subject Vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the Subject Vehicle continues to this day to exhibit some, or all of the non-conformities described herein.

14. The defects experienced by Plaintiffs with the Subject Vehicle substantially impaired its use, value and safety.

15. Plaintiffs directly notified the Defendant of the defective conditions of the Subject Vehicle.

## VI. Causes of Action

**COUNT 1: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

16. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

17. Defendant violated the following provisions of the DTPA:

  a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

  b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

  c. §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987);

  d. §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

  e. §17.50(3): an unconscionable action or course of action as defined by §17.45(5); and

  f. §17.46(b)(12): misrepresenting agreements and legal rights.

18. Because of the inherent defects in the Subject Vehicle which defects existed at the time the Subject Vehicle was sold although not discovered until later, the Subject Vehicle was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such recreational vehicles are used. Furthermore, Defendant failed to perform the repair work in a good and workmanlike manner. This conduct by Defendant constitutes a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

19. The Defendant's statements that the Subject Vehicle's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendant's services. For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

20. The Defendant's acts or practices in the selling and/or repairing of the Subject Vehicle to Plaintiffs were unconscionable actions or courses of action because they took advantage of the Plaintiffs' lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

21. Plaintiffs further contend that Defendant's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

22. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

23. Any purported waiver or limitation of rights under DTPA by the Defendant is a violation of public policy under §17.42. WAIVERS: PUBLIC POLICY:

(a) Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a waiver is valid and enforceable if:

   (1) the waiver is in writing and is signed by the consumer;

   (2) the consumer is not in a significantly disparate bargaining position;

   and

   (3) the consumer is represented by legal counsel in seeking or acquiring the goods or services.

(b) A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a Defendant or an agent of the Defendant.

(c) A waiver under this section must be:

   (1) conspicuous and in bold-faced type of at least 10 points in size;

   (2) identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and

   (3) in substantially the following form:
   "I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections. After consulting with an attorney of my own selection, I voluntarily consent to this waiver.

  (d) The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

24. Any purported limitation or reduction in the statute of limitations by the Defendant under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

  (a) Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

  (b) This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

25. Under DTPA the statute of limitations is two years §17.565. LIMITATION:

**All actions brought under this subchapter must commence within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the Plaintiffs prove that failure timely to commence the action was caused by the Defendant knowingly engaging in conduct solely calculated to induce the Plaintiffs to refrain from or postpone the commencement of the action.**

26. The limited remedy in Defendant's warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendant or its authorized dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

27. The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

28. Plaintiffs seek the remedy of rescission of the sales contract under §17.50(b)(3) and seeks an order necessary to restore to Plaintiffs any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

29. As a direct and proximate result of Defendant's willful violation of its obligations under the DTPA, Plaintiffs have suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the Subject Vehicle, damages associated with the inconvenience suffered as a result of the complete failure of the to operate properly, the loss of use of the during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, mental anguish and attorneys' fees. Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $300,000.00 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

30. Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevail. As a proximate result of Defendant's misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 1: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

31. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

32. Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

33. Defendant is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

34. The Subject Vehicle is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

35. The express warranties more fully described hereinabove pertaining to the Subject Vehicle is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

36. The actions of Defendant in failing to tender the Subject Vehicle to Plaintiffs free of defects and refusing to repair or replace the Subject Vehicle tendered to Plaintiffs constitute a breach of the written and implied warranties covering the Subject Vehicle and hence a violation of the Magnuson-Moss Warranty Act.

37. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

38. As a direct and proximate result of the acts and omissions of Defendant and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $150,000 according to proof at trial.

39. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as

more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 2: BREACH OF EXPRESS WARRANTIES

40. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

41. The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that the Subject Vehicle was free of defects in materials and work quality at the time of delivery.

42. As alleged above, the Defendant breached its warranties by offering for sale and selling as safe to Plaintiffs a Subject Vehicle that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

43. In breach of the foregoing warranties, the Defendant has failed to correct said defects.

44. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the Subject Vehicle; costs of repairs; expenses associated with returning the Subject Vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 3: BREACH OF IMPLIED WARRANTIES

45. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

46. The Defendant impliedly warranted that the Subject Vehicle which it designed, manufactured, and sold, was merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

47. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant are unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the Subject Vehicle had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

48. Because of the defects, the Subject Vehicle is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendant breached the implied warranty of merchantability.

49. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the Subject Vehicle; costs of repairs; expenses associated with returning the Subject Vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## VII. Economic and Actual Damages

50. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

   a. Out of pocket expenses, including but not limited to the money paid towards the note securing the Subject Vehicle;

   b. Loss of use;

   c. Loss of the "benefit of the bargain";

   d. Diminished or reduced market value; and

e.  Costs of repairs.

## VIII. Damages for Mental Anguish

42. Plaintiffs would further show false, misleading and deceptive acts, practices and/or omissions described herein above were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that the Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

43. As a result of such acts, practices and /or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiffs hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

## IX. Request for Rescission of the Sale under Texas DTPA §17.50(b)(3)

44. Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

45. Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to him the money obtained by Defendant because of its breach of Texas DTPA as set forth above. Plaintiffs also seek cancellation of the debt and now offer to return the Subject Vehicle to Defendants.

## X. Multiple Damages

46. The Defendant's conduct in violation of the DTPA was committed knowingly, as that term is defined under Texas DTPA in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

47. Plaintiffs further show that such acts, practices, and/or omissions were committed "intentionally" in that Defendant specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

48. Therefore, Plaintiffs are entitled to recover multiple damages as provided by §17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of his economic damages.

### XI. Attorney Fees and Costs

51. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### XII. Prayer

52. For these reasons, Plaintiffs pray for judgment against the Defendant for the following:

    a. For general, special and actual damages according to proof at trial;

    b. Rescinding the sale of the Subject Vehicle and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c. For incidental and consequential damages according to proof at trial;

    d. Out of pocket damages for expenditures related to any cost of repairs, deductibles, and towing charges.

    e. Any diminution in value of the Subject Vehicle attributable to the defects;

    f. Past and future economic losses;

    g. Prejudgment and post-judgment interest;

    h. Damages for loss of use of Subject Vehicle;

    i. Civil Penalties and/or Punitive damages;

    j. Damages for mental anguish;

    k. Attorney fees;

    l. Costs of suit, expert fees and litigation expenses; and

    m. All other relief this Honorable Court deems appropriate.

## XIII. Demand for Jury Trial

53. Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
111 Park West Drive
Scott, LA 70583
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS